MORRIS E. WAHLERT *et al.*, Respondents, v. ISAAC WEISBERG, Appellant.

St. Louis Court of Appeals, April 7, 1897.

Contract: RESCISSION. Where the vendees of goods, delivered under an agreement to hold them subject to the orders of the vendor, if not satisfactory, returned the goods to the vendor, after holding them a reasonable time and using reasonable efforts to ascertain his wishes in regard to them, they did all that was required in the rescission of the agreement.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*Montague Lyon* for appellant.

The respondents, if entitled to reject the feathers in controversy, were bound, under the agreed statement of facts, to hold them subject to appellant's order, and did not have the right to return the same to appellant against his objections. *Walls v. Gates*, 6 Mo. App. 242; *Boyer v. Neel*, 50 *Id.* 26; *Machine Co. v. Bobbst*, 56 *Id.* 427; *Nichols v. Larkin*, 79 *Id.* 264.

Inasmuch as respondents had no right, under the agreed statement of facts, to return the goods in controversy to appellant without his consent, the balance due respondents was the amount ($8.06) tendered with interest to time of tender. *Penninger v. Reilley*, 44 Mo. App. 255.

*Hugh D. McCorkle* for respondents.

Where there is a failure to accept, or a rescission, the proposed vendee is bound to return or offer to return the goods delivered. *Fenwick v. Bowling*, 50 Mo. App. 516; *Wall v. Gates*, 6 *Id.* 242. But he may notify the vendor that he holds the goods subject to his order, or he may place them in neutral custody, as in a warehouse. *Grimolby v. Wells*, L. R. 10 C. P. 391.

His election to reject must be timely or it will be too late. *Tower v. Pauly*, 51 Mo. App. 75; *Steam Heating Co. v. Fixture Co.*, 60 *Id.* 148.

BOND, J.—This case was begun before a justice of the peace, where the plaintiffs had judgment. Upon defendant's appeal to the circuit court the cause was submitted to the judge thereof, a jury being waived, upon the following agreed statement of facts:

"On or about the —— day of February, 1892, the plaintiffs and the defendant entered into an oral agreement whereby the defendant agreed to ship to the plaintiffs at St. Louis, Missouri, at such times as he might be able to obtain them, about one thousand pounds of 'prime' feathers at thirty-nine (39) cents per pound, the defendant to be permitted to draw against such feathers on the bills of lading therefor, and any differences between the parties as to the weights and quality to be adjusted afterward. And afterward, on the same day, it was also agreed between the said parties, that the defendant might ship along to the plaintiffs, with such 'prime feathers,' 'old' feathers, and that the price to be charged the plaintiffs for such 'old' feathers should be the reasonable market price of such 'old' feathers at the time of receipt of shipment at St. Louis, Missouri, less the freight charges thereon from

Moberly, Missouri, to St. Louis, Missouri, a distance of one hundred and forty-eight (148) miles, the defendant's place of business being Moberly, Missouri, and the nearest market city being St. Louis, Missouri.

"And it was also agreed that if such 'old' feathers, when received by the plaintiffs, should not be satisfactory to them at the prices stated in the invoices therefor, the plaintiffs should notify the defendant that the feathers were not satisfactory, and the plaintiffs should then hold them subject to the defendant's order.

"The defendant fulfilled his agreement with plaintiffs as to the 'prime' feathers, and the plaintiffs paid the defendant for them. In the course of the defendant's shipments of 'old' feathers to the plaintiffs, under said agreement as to them, the defendant on July 26, 1892, shipped to the plaintiffs, together with other feathers, one sack of number 2 'old' feathers of the net weight of one hundred and eighty-two (182) pounds, and charged therefor the price of thirty-nine (39) cents per pound, or seventy dollars and ninety-eight ($70.98) altogether, as per invoice therefor hereto attached, and sent to the plaintiffs on July 26, 1892.

"The bill of lading for the entire shipment, with draft attached, was presented to the plaintiffs on July 27, 1892, before the invoice was received, and the draft was paid by them on that day. Said bill of lading enumerated certain sacks of feathers without specifying either kind or quality.

"Plaintiffs received said sack of number 2 feathers on July 30, 1892, and on the same day they and two other feather dealers inspected the same, and pronounced the feathers 'XX,' which were worth not more than twenty-eight cents (28) per pound on the market at that time. But the plaintiffs did not communicate either the market value or their own valuation to the defendant.

"On the same day, July 30, 1892, plaintiffs wrote to the defendant in substance that they could not use these number 2 feathers at thirty-nine (39) cents per pound, and would hold same subject to the defendant's order, in accordance with the former agreement, in case the feathers should not turn out to plaintiffs' liking, and that they would await the defendant's instructions with regard to the sack of feathers, held subject to defendant's order. The plaintiffs at the same time demanded the repayment to them of the amount charged in the draft paid by them for these feathers, to wit: Seventy dollars and ninety-eight cents ($70.98), together with other charges for freight and allowances on previous shipments, aggregating eight dollars and six cents ($8.06), for all of which ($79.04) they drew a draft on the defendant on the same day, which draft was not honored by the defendant.

"On July 31 (dated August 1), 1892, the defendant replying to the plaintiffs, wrote in substance that the plaintiffs' letter of July 30, 1892, did not contain any invoice, as stated therein, and asked for an invoice of freight charges, and also asked the plaintiffs what the number 2 feathers were worth to them, and if not much out of the way defendant would see what he could do.

"On August 1, 1892, the plaintiffs, acknowledging the receipt of the defendant's letter of July 31, wrote to the defendant in substance that the defendant was so far above their views on the number 2 feathers that they did not care to make an offer for these feathers, and would prefer that the defendant try some one else, and that they were holding these feathers subject to the defendant's order, as agreed. Plaintiffs also inclosed freight bills with this letter.

"On August 4, 1892, the plaintiffs wrote the defendant the following letter:

" 'St. Louis, August 4, 1892.
" 'Messrs. I. Weisberg & Co., Moberly, Mo.

" 'Gentlemen:—We note to our surprise that you have allowed our draft to be returned unpaid. We must state that we insist upon prompt payment of our claim. We decline to accept the sack of number 2 feathers, as we did not order them, and if you do not advise us by return mail what disposition to make of the same we will ship it back to you. We will not make you an offer on the goods, as we consider that you know just as well as we do the value of the stock in question, and we consider it an entirely unbusiness-like proceeding for you to charge same at the price at which you did. As to taking the old feathers with the prime, that is entirely out of the question. The primes were due us on the contract and we are under no obligation to accept other stock from you. We paid your draft, relying upon receiving fair treatment from you, and we do not propose to allow our confidence to be abused. We will split no differences or make no allowances, and insist upon this claim being paid promptly and in full.

" 'Yours very truly,
" 'Wahlert & Guntzler.'

"On August 6, 1892, the defendant, acknowledging the receipt of the plaintiffs' letters of August 1 and 4, wrote to the plaintiffs in substance that he returned the draft unpaid, because no invoice had been sent with the draft and because the plaintiffs ought to have waited until he and they could come to some understanding about these 'old' feathers.

"On August 8, 1892, the plaintiffs shipped the sack of number 2 feathers, in controversy in this case, back to the defendant at Moberly, Missouri, by railroad freight, and so advised the defendant by letter the same day.

"On August 9, 1892, the defendant wrote to the plaintiffs that the sack of feathers was lying at the freight house at Moberly at their risk, and he would not accept it under any circumstances.

"The feathers in controversy were afterwards sold by the railroad company to pay freight charges for the return shipment from St. Louis to Moberly, and the surplus of proceeds from that sale is now held by the railroad company awaiting a claimant, and neither the defendant nor the plaintiffs have ever, since said return shipment, received the feathers or any of the proceeds of the sale thereof by the railroad company.

"On September 16, 1892, the defendant sent to the plaintiffs his check for $8.06, to balance the plaintiffs claim against him to that date, but the plaintiffs returned said check to him with the following letter, written by them to him, to wit:

" 'ST. LOUIS, September 17, 1892.
" '*Messrs. I. Weisberg & Co., Moberly, Mo.*

" 'GENTLEMEN:—Your letter of the 16th inst., inclosing check for $8.06 is at hand. We return you the check herewith, as the amount is not correct. Our claim against you amounts to $79.04 as per our invoice of July 30, duplicate of which we inclose herewith. The amount, $79.04, which we claim from you, is absolutely correct, and as we decline to accept anything less than this amount we do not wish to carry on any controversial correspondence with you, but we will be glad to see you when you come to St. Louis, when we have no doubt that the matter will be satisfactorily adjusted.

" 'Yours very truly,
" 'WAHLERT & GUNTZLER.'

"The defendant admits that he is indebted to the plaintiffs in said sum of $8.06 with interest until date of tender made in said letter from them to him of date

September 17, 1892, amounting altogether to $8.25, which the defendant has deposited in this court on this February 27, 1896, for the plaintiff's use, and which the plaintiffs refuse to accept, and the defendant contends that the plaintiffs should recover only $8.25, without costs.

"The plaintiffs claim that the defendant is indebted to them in the sum of $79.04 for the price ($70.98) paid by the plaintiffs to the defendant for said sack of number 2 feathers, rejected by the plaintiffs, and for freight and allowance as aforesaid ($8.06).

"The questions for the decision of the court are: *First*, does the defendant, under the foregoing facts, owe the plaintiffs $79.04, as claimed by the plaintiffs, or $8.25 as contended by the defendant; and, *secondly*, if the court should find in favor of the plaintiffs for $8.25 only, are the plaintiffs entitled to recover the unpaid costs of this case?    Respectfully submitted,

(Signed)  "WAHLERT & GUNTZLER, Plaintiffs.

(Signed)  "ISAAC WEISBERG, Defendant.

(Signed)  "HUGH D. MCCORKLE,

"Attorney for Plaintiffs.

(Signed)  "MONTAGUE LYON,

"Attorney for Defendant."

The invoice referred to in said agreed statement of facts as being thereto attached, is as follows to wit:

"MOBERLY, MO., July 26, 1892.

"*M. Wahlert & Guntzler, St. Louis.*

"Bought of I. Weisberg & Co., successors to J. Schott & Co., wholesale dealers in hides, wool, furs, pelts, tallow, beeswax, feathers, etc.

"Terms cash.

(sic)

| | |
|---|---|
| 3 bales pr. Feathers, 846 nett | |
| 600 due on contract at 39 | $234 00 |
| 246 at present marked at 45. | 110 70 |
| (sic) | |
| 1 sack No. 2 Feathers, 182 nett at 39. | 70 98 |
| | $415 68" |

Wahlert v. Weisberg.

There was a verdict and judgment in favor of plaintiffs for $95.24 and costs, from which defendant has appealed to this court.

It is insisted by appellant's counsel that respondents, after rejecting the number 2, or "old" feathers billed to them by appellant, had no right to CONTRACT: rescission. return said goods under the terms of the contract in reference to shipments of this sort contained in the agreed statement of facts. This position is too broad. It is true that respondents agreed, upon the exercise of the option reserved to themselves of refusing such "old" feathers as were not satisfactory, to hold them subject to appellant's order. But this agreement can not be taken in an absolute sense, it must be understood in the light of the subject-matter of the shipment, the relation of the parties and other attending circumstances. With reference to goods of this class, there was a different and distinct agreement between the parties from that made touching "prime" feathers. By the agreement as to the inferior quality of feathers, all that respondents were required to do was to give notice that "the feathers were not satisfactory." This notice relieved them from any obligation to pay, and constituted them custodians of the goods, subject to the shippers' order. The agreed statement of facts shows that upon the arrival of the sack of number 2 feathers in controversy, respondents at once notified appellant of the rejection of the goods, and that they were held subject to their order, and demanded repayment of the amount paid for the rejected shipment upon a draft which arrived before the goods. After some correspondence, in which appellant strove to get respondents to accept the feathers on other terms, all of which proposals were declined, respondents wrote (August 4, 1892) advising appellant that the amounts paid on the rejected feath-

ers must be returned, and stating further that failing to receive directions as to the future disposition of the goods, they would be reshipped at once.   To this letter appellant *replied, giving no directions as to the future disposition of the feathers*, but excusing on other grounds his failure to repay the draft which respondents had drawn for the amount charged for this shipment.  Two days after the reception of this letter, respondents returned the goods.

It is plain from these facts that respondents retained the discarded feathers for a reasonable time, and only returned them to appellant after the wrongful failure of appellant to give any directions as to the future custody of the goods.   The law did not require respondents to do more, under their agreement, than to retain the goods in question a reasonable time and use reasonable efforts to ascertain the wishes of appellant in regard to them.   Having done this, their whole duty was performed in the rescission of the agreement by returning the goods to the vendor.   Our conclusion is that the court did not err in applying the law to the agreed facts, and the judgment is therefore affirmed. It is so ordered. · All concur.